**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **TAMMY R. NEAL,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:06-CV-3138-WSD/AJB** |
| **v.** | : | |
| | : | |
| **IMC HOLDINGS, INC., and** | : | |
| **IMC GLOBAL TRADING, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

**ORDER FOR SERVICE OF
<u>REPORT AND RECOMMENDATION</u>**

Attached is the Report and Recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), and

N.D. Ga. R. 72.1(D)(2).  Let the same be filed and a copy, with a copy of this order, be

served upon counsel for the parties or, if a party is not represented, upon that party

directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within ten (10) days of receipt of this Order.

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to any transcripts if applicable) and shall be

served upon the opposing party.  The party filing objections will be responsible for

obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this ___20th___ day of __October__, 2008.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

AO 72A
(Rev.8/8
2)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TAMMY R. NEAL,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:06-CV-3138-WSD/AJB** |
| **v.** | : | |
| | : | |
| **IMC HOLDINGS, INC., and** | : | |
| **IMC GLOBAL TRADING, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES MAGISTRATE JUDGE'S
### FINAL REPORT AND RECOMMENDATION

Before the Court is Defendants' "Motion for Sanction of Dismissal Based on Fabrication of Evidence." [Doc. 56]. For reasons set forth herein, the undersigned **RECOMMENDS** that Defendants' motion be **GRANTED**.

## I.    INTRODUCTION

On December 28, 2006, Plaintiff filed a civil action alleging retaliation, sex discrimination, and sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"). [Doc. 1]. Plaintiff then amended her complaint on March 22, 2007, to add a retaliation claim under 42 U.S.C. § 1981, [Doc. 5], to which Defendants answered on June 1, 2007, [Doc. 10].

3

On February 26, 2008, the District Court entered an order granting Plaintiff's attorneys' motion to withdraw and directing Plaintiff to notify the court within twenty days whether she planned to proceed *pro se*. [Doc. 50]. When Plaintiff failed to notify the District Court of whether she intended to litigate her case *pro se*, the undersigned issued an order for Plaintiff to show cause why she had not complied with the District Court's Order. [Doc. 54].

At the April 21, 2008, show cause hearing, Defendants' counsel indicated that there was evidence that Plaintiff had fabricated an important piece of evidence in her case. As a result, the undersigned reopened discovery for the sole purpose of allowing the parties to conduct discovery on whether Plaintiff had fabricated evidence. The undersigned also permitted the parties to file dispositive motions within twenty days after the close of this limited discovery. [*See* Doc. 55]. Defendants then timely filed a "Motion for Sanction of Dismissal Based on Fabrication Evidence" on June 10, 2008, requesting that the District Court exercise its inherent powers to dismiss the case because of Plaintiff's misconduct in allegedly fabricating evidence. [Doc. 56]. Plaintiff did not file a response. [*See* Dkt.].

Despite Plaintiff's failure to respond, the undersigned scheduled an evidentiary hearing to ensure that Plaintiff was provided due process before considering the

4

propriety of the motion to dismiss. [Doc. 59]. As a result, the undersigned held an

evidentiary hearing on October 6, 2008, and October 17, 2008. At the hearing, the

undersigned heard testimony from Plaintiff and two witnesses for Defendants: Shelley

Schmidt and Christopher Layton. Based on the evidence and arguments presented at

the evidentiary hearing and in support of the motion to dismiss, the undersigned makes

the following findings of fact and conclusions of law.

## II.    FINDINGS OF FACT

  A.    *Plaintiff's Employment History with Defendants*

1.    Shelley Schmidt is a recruiter who placed Plaintiff with IMC Global Trading,

Inc. ("IMC"). (Neal and Schmidt testimony from Evid. Hearing).

2.    Plaintiff was employed by IMC until her termination on November 16, 2005.

[*See* Doc. 56 at 2-3].[1]

  B.    *Litigation History*

3.    On May 4, 2006, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") alleging retaliation and sex

_____

  [1]    In the fall of 2006, Systems Material Handling purchased IMC. (Layton
Testimony from Evid. Hearing).

5

discrimination.  (EEOC Charge in Doc. 56 at Appx. 1).  As part of the factual

allegations supporting the EEOC charge, Plaintiff wrote in relevant part:

> In the late summer 2005, I took a week off of work because my daughter
> was starting school.  I had the time off available and scheduled it long in
> advance; however, my Managing Director Jim Zeferjahn sent me an
> abrasive email in response to my being away from work that stated that
> my job may not *"suit your lifestyle as a mother."*  Male Commodity
> Managers regularly took time off of work and were not threatened or
> harassed in the same manner.

(Attach. A of EEOC Charge (emphasis added) in Doc. 56 at Appx. 1).

4.    As part of the factual allegations of Plaintiff's initial complaint and amended

complaint, she again indicated that her supervisor, Jim Zeferjahn, sent her an email,

which stated that "the commute to Chicago is not fitting your lifestyle as a mother."

[Docs. 1 & 5 ¶ 18].

5.    This same allegation was repeated in the factual summaries from her initial

disclosures and the joint preliminary planning report and discovery plan.  [Doc. 12 at 3;

Doc. 13 at 3].

6.    During the discovery period, Plaintiff produced two copies of Zeferjahn's email

with the "as a mother" language.  [Doc. 56 at 3-4; *see also* Appxs. 2-3 in Doc. 56].

7.    During Plaintiff's deposition testimony, Plaintiff stated that the email from

Zeferjahn contained the "as a mother" language.  (Neal Deposition at 216-17).

6

   *C. Jim Zeferjahn's August 17, 2005, Email*

8. On August 17, 2005, Zeferjahn sent Plaintiff an email.  (Neal testimony at Evid. Hearing).

9. There are two versions of this August 17 email.  In one version, the email states in relevant part, "Perhaps the commute to Chicago is not fitting into your lifestyle as a mother?"  (Exh. 1 from Evid. Hearing).  In the other version, the email does not contain the "as a mother" language, but instead only states, "Perhaps the commute to Chicago is not fitting into your lifestyle?"  (*See* Exhs. 3-9 from Evid. Hearing).  At the evidentiary hearing, nine emails were admitted relating to Mr. Zeferjahn's email.

10. The version of the email containing the "as a mother" language was produced by Plaintiff in her civil action to support her lawsuit.  (Neal testimony from Evid. Hearing; *see also* Neal Dep. at 217).

11. The version of the email without the "as a mother" language has come from two sources: Schmidt's email records and the backup tapes from IMC.

12. The emails from Schmidt's records demonstrate that Plaintiff forwarded Zeferjahn's email to Schmidt and forwarded Plaintiff's response to Zeferjahn's email to Schmidt.  Neither forwarded email contains the "as a mother language."  (Exhs. 3-4 and Schmidt testimony from Evid. Hearing).

AO 72A
(Rev.8/8
2)

13.     These emails came from Schmidt's email archives, which were stored remotely on the servers of a company, ASP. To access the emails on the ASP server, Schmidt uses a password, to which neither IMC nor Zeferjahn have access. (Schmidt testimony). Schmidt accessed the archived emails in March 2008.

14.     Pursuant to a request form Defendants' lawyers, in January 2008, Christopher Layton, a network administrator for IMC, retrieved the backup tapes containing emails relating to Zeferjahn's August 17 email. (Layton testimony from Evid. Hearing).

15.     The backup tapes are stored offsite and are held in a safe, the combination for which only the network administrators have. (*Id.*).

16.     Layton restored emails from both Zeferjahn's email account and Plaintiff's email account from the backup tapes. (*Id.*).

17.     The restored copy of Zeferjahn's August 17 email to Plaintiff did not contain the "as a mother" language. (*See* Def't Exh. 5 from Evid. Hearing).

18.     The four restored emails from Plaintiff's IMC email account did not contain the "as a mother" language. (*See* Def't Exhs. 6-9 from Evid. Hearing).

19.     First, Plaintiff forwarded Zeferjahn's email to Schmidt and Plaintiff's home gmail account. The forwarded version of Zeferjahn's email did not contain the "as a mother" language. (Def't Exh. 6 from Evid. Hearing).

8

20.    Second, Plaintiff forwarded a copy of Zeferjahn's email to herself, which did not contain the "as a mother" language.  (Def't Exh. 7 from Evid. Hearing).

21.    Third, Plaintiff forwarded a copy of her response to Zeferjahn's email to Schmidt.  In this email, Plaintiff responded to each assertion raised in Zeferjahn's email by directly quoting from a point raised by Zeferjahn and then providing a response. The language taken from Zeferjahn's email does not include the "as a mother" language.  (Def't Exh. 8 from Evid. Hearing).

22.    Fourth, Plaintiff sent her response to Zeferjahn that she had previously forwarded to Schmidt.  This response did not include the "as a mother" language.  (Def't Exh. 9 from Evid. Hearing).

23.    The digital footprint for the emails from both Zeferjahn's IMC account and Plaintiff's IMC account demonstrated that the emails were not modified because the "modified date" and the "created date" for the emails were the same.  (Layton testimony from Evid. Hearing).

24.    Plaintiff intentionally altered Zeferjahn's August 17, 2005, email by adding the "as a mother" language to the email that she relied on in bringing her EEOC charge and in bringing her civil action.[2]

## III.    PARTIES' ARGUMENTS

Defendants argue that the District Court should exercise its inherent authority and dismiss Plaintiff's case because Plaintiff fabricated evidence by inserting the "as a mother" language into emails produced in discovery.  Defendants contend that Plaintiff clearly provided fabricated evidence because: (1) retrieval of Zeferjahn's August 17 email from Defendants' computer storage did not contain the "as a mother"

---

[2]    The undersigned finds that clear and convincing evidence demonstrates that Plaintiff intentionally altered the email for the following reasons.  First, the emails from Schmidt's email archives (Exhs. 3-4) do not contain the "as a mother" language, and Schmidt testified that these emails were the ones that Plaintiff sent.  Second, Layton's undisputed testimony demonstrates that there were no modifications to the restored emails that were obtained from IMC's backup tapes.  These restored emails did not contain the "as a mother" language.  Third, Plaintiff did not produce any credible evidence to challenge Schmidt's and Layton's testimony.  Although Plaintiff testified at the hearing that she did not alter the emails, the evidence from Layton and Schmidt both demonstrate that the emails were altered to include the "as a mother" language.  Also, although Layton testified that Zeferjahn could have been given access to Plaintiff's emails to alter them, Layton's undisputed testimony that the emails were not modified disproves that Zeferjahn or someone else from IMC actually altered any emails in the IMC email accounts.  As a result, the undersigned finds that Plaintiff intentionally altered Zeferjahn's email to add the "as a mother" language because there is no other explanation for the "as a mother" language.

AO 72A
(Rev.8/8
2)

language; (2) the emails from Plaintiff's IMC email account did not contain the "as a

mother" language; and (3) the emails that Plaintiff forwarded to Schmidt did not

contain the "as a mother" language.  Defendants also assert that Plaintiff does not hold

in high esteem the integrity of the judicial system because she perjured herself during

her deposition by claiming that Zeferjahn's email contained the "as a mother" language.

Defendants further argue that the email with the "as a mother" language was a linchpin

of the case because: (1) it was an important piece of evidence as demonstrated by the

"as a mother" language being directly quoted in the EEOC charge, the initial complaint,

and the amended complaint; (2) the "as a mother" language clearly relates to the gender

discrimination claim; and (3) the email with the "as a mother" language is front and

center in the case.  Defendants finally assert that dismissal is the appropriate sanction

because: (1) the evidence shows that Plaintiff willfully modified the email; and

(2) lesser sanctions are not appropriate because they would be an open invitation for

Plaintiff and other litigants to continue to abuse the judicial process.  [*See* Doc. 56 at

10-13; Oral Arguments at Evid. Hearing].

    Plaintiff has not provided a written response to these arguments.  [*See* Dkt.].  At

the evidentiary hearing, Plaintiff first argued that she did not fabricate the evidence.

Plaintiff noted that Defendants had not performed forensic work.  She stated that the

11

email from her personal gmail account contained the "as a mother" language.  She

contended that Layton admitted that someone from IMC could have accessed the email

records and changed the emails.  Plaintiff next argues that the "as a mother" email is

not a pivotal piece of evidence in the case but instead is only one component of her sex

discrimination claim.  Plaintiff also contends that her sexual harassment and retaliation

claims do not rely on the email with the "as a mother" language as evidence to support

these claims.  [Oral Argument at Evid. Hearing].

## IV.    CONCLUSIONS OF LAW

The Supreme Court has recognized that federal courts have the inherent authority

to manage their affairs "so as to achieve the orderly and expeditious disposition of

cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  However, "[b]ecause of

their very potency, inherent powers must be exercised with restraint and discretion."

*Id.* at 44.  As a result, a federal court in invoking its inherent power "must comply with

the mandates of due process" in determining that bad faith exists and in assessing

sanctions.  *See id.* at 50.  Courts most often invoke their inherent powers "where a party

commits perjury or destroys or doctors evidence."  *Qantum Comms. Corp. v. Star

Broadcasting, Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007); *REP MCR Realty,

L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1010 (N.D. Ill. 2005) (citing cases for the

AO 72A
(Rev.8/8
2)

proposition that "a district court may dismiss an action with prejudice to sanction . . . fraudulent fabrication of documents").

The Supreme Court has recognized that "outright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion" when it exercises its inherent power. *Chambers*, 501 U.S. at 45. The Eleventh Circuit restrains a court's use of its inherent power to dismiss an action by requiring the presence of the following two conditions: (1) the party's misconduct was willful or in bad faith; and (2) lesser sanctions will not suffice to correct the misconduct. *See, e.g.*, *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). The undersigned addresses both of these factors below.

A.    *Willful Conduct / Bad Faith*

The Eleventh Circuit has stated that " 'the key to unlocking a court's inherent power is a finding of bad faith.' " *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). " 'Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled . . . .' " *Qantum Commc'ns Corp.*, 473 F. Supp. 2d at 1268-69 (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005)). Also, the Eleventh Circuit has stated

13

that "willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996) (quoting *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986)); *see also M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872-73 (10th Cir. 1987) (defining a willful failure to obey an order as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown.") (quoting *In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir. 1987)); Black's Law Dictionary (8th ed. 2004) (defining willful as "[v]oluntary and intentional, but not necessarily malicious"); *cf. United States v. Pomponio*, 429 U.S. 10, 23-24 (1976) (holding that willfulness "means a voluntary, intentional violation of a known legal duty," with no requirement of an "evil motive").

The undersigned finds that Plaintiff's fabrication of the Zeferjahn's email by adding "as a mother" language was done in bad faith and was willful. First, the evidence in this case clearly demonstrates that Plaintiff intentionally fabricated evidence by inserting "as a mother" into an email sent by her supervisor. At the evidentiary hearing, Shelley Schmidt testified that the two emails admitted into evidence (Exhibits 3 and 4) were emails that Plaintiff had forwarded to her in August 2005. These emails both reflect that Zeferjahn's email never contained the "as a

mother" language.  The undisputed testimony from Christopher Layton demonstrates that the original email from Zeferjahn (Exhibit 5) and  the original emails from Plaintiff's IMC email account (Exhibits 6-9) did not contain the "as a mother" language.  Plaintiff has not provided any persuasive evidence to demonstrate that the original emails contained the "as a mother" language.  Despite the absence of the "as a mother" language from the original emails, Plaintiff produced in discovery emails that contained the "as a mother" language.  There is no explanation for this additional language other than that Plaintiff added "as a mother" to bolster her sex discrimination claim.  Thus, the undersigned concludes that the "as a mother" language was intentionally fabricated by Plaintiff, rendering her conduct was willful.

Second, Plaintiff's use of the fabricated emails was an abuse the judicial process and therefore done in bad faith.  Plaintiff's reliance on the "as a mother" language in the judicial process started with her complaint and amended complaint.  In these documents, Plaintiff alleged that Zeferjahn sent an "abrasive" email that the commute might not be fitting Plaintiff's "lifestyle as a mother."  [*See* Doc. 1 ¶ 18; Doc. 5 ¶ 18].  She then repeated the statement in her initial disclosures and in her preliminary report and scheduling plan.  [*See* Doc. 12 at 3; Doc. 13 at 3].  During discovery, Plaintiff produced two emails, which contained the "as a mother" language. [*See* Doc. 56 at 3-4;

*see also* Appxs. 2-3 in Doc. 56].  At Plaintiff's deposition, she even testified that the email sent by Zeferjahn contained the "as a mother" language despite the other evidence to the contrary.  (*See* Neal Dep. at 216-17).  Finally, Plaintiff testified in open court that she did not fabricate the evidence, which was clearly contradicted by Schmidt and Layton's subsequent testimony.  (*See* Neal testimony from Evid. Hearing).  This summary demonstrates that Plaintiff has relied on the fabricated "as a mother" evidence throughout her lawsuit, including in testimony before the Court.  Given the reliance on this intentionally fabricated evidence throughout the litigation, the undersigned concludes that Plaintiff's actions have abused the judicial process and therefore constitute bad faith.

B.    *Lesser Sanctions*

The Eleventh Circuit has recognized that "the harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable." *Betty K Agencies*, 432 F.3d at 1338.  Courts have noted that the inherent power to dismiss an action "is appropriately exercised particularly where a party 'commits perjury or . . . doctors evidence" that 'relates to the pivotal or linchpin issue in the case." *Quiroz v. Superior Bldg. Maint., Inc.*, No. 06-cv-21594, 2008 WL 3540599 at * 5 (S.D. Fla. Aug. 12, 2008) (quoting *Qantum Commc'ns.*

16

*Corp.*, 473 F. Supp. 2d at 1269). This is so because "[l]itigants must know that the courts are not open to persons who would seek justice by fraudulent means." *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995). As a result, "[t]he federal case law is well established that dismissal is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims." *Id.* at 1581.

The undersigned concludes that lesser sanctions will not suffice in this case. Initially the undersigned finds that the fabrication of the "as a mother" language constitutes serious misconduct, so minor sanctions will not address the misconduct. The undersigned therefore will only address those sanctions that could address the misconduct in this case. As a result, the undersigned examines the following lesser sanctions: monetary sanctions, exclusion of evidence, and dismissal of only the discriminatory discharge claim.

First, the undersigned does not find that monetary sanctions are adequate to remedy the misconduct in this case. "Monetary sanctions include fines and the award of attorney's fees and expenses. *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C. 2003). Courts have noted, however, that "where there has been fraudulent misconduct, 'monetary sanctions may be inherently inadequate to remedy the harm to the public interest in preserving the integrity of the courts and in

17

deterring future misconduct.' "  *Id.* (quoting *Derzack v. County of Allegheny*, 173 F.R.D. 400, 416 (W.D. Pa. 1996)).  As discussed above, Plaintiff's intentionally added "as a mother" to emails produced in discovery.  This action was clearly fraudulent.  As a result, monetary sanctions would not cure the misconduct but instead "would be 'an open invitation to abuse [] the judicial process' and would convey a message to [Plaintiff] and other litigants 'that they have everything to gain and nothing to lose' by engaging in misconduct."  *Id.* (quoting *Pope v. Fed. Expr. Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990), *vacated in part on other grounds by Pope v. Fed. Exp. Corp.*, 974 F.2d 982 (8th Cir. 1992)).

The undersigned also doubts that Plaintiff could afford the monetary sanction. Here, Defendants have expended substantial resources in proving that Plaintiff fabricated evidence.  These resources include: (1) using employees to gather and analyze the backup tapes relating to the August 17, 2005, email; (2) retaining a very capable and experienced attorney to raise and prove fabrication allegations; and (3) paying the expenses of having Mr. Layton travel to an evidentiary hearing concerning the fabricated evidence.  Although the undersigned does not know the exact cost of these actions by Defendants, the undersigned surmises that the cost is substantial.  As a result, the undersigned concludes that it is likely that Plaintiff could

not pay the substantial costs associated with her fabrication.  Also, reimbursement of fees and expenses to Defendants would do little to assuage the insult to the integrity of the justice system caused by Plaintiff's fabricating evidence.

Second, the undersigned finds that mere exclusion of the "as a mother" evidence would be inadequate.  This evidence is clearly intended to bolster Plaintiff's discriminatory discharge claim.  Its importance to the claim is evidenced by Plaintiff's reliance on the "as a mother" language throughout the administrative, pleading, and discovery phases of her discrimination case.  The exclusion of the evidence therefore appears to effectively hamper Plaintiff's ability to prove her discriminatory discharge claim because Plaintiff viewed the "as a mother" language as a very important piece of evidence to prove this claim.  As a result, exclusion of evidence containing the "as a mother" language appears to dispose of this claim.   Courts have stated that "[s]uch issue-related sanctions are not appropriate, however, where, as here, the misconduct goes to a dispositive issue, such that an issue-related sanction 'effectively disposes of the merits anyway.' " *Young*, 217 F.R.D. at 70 (quoting *Webb v. Dist. of Columbia*, 146 F.3d 964, 972 (D.C. Cir. 1998)).

The undersigned also notes that exclusion is an insufficient sanction for the following reason:

> Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues.

*Vargas*, 901 F. Supp. at 1582 (quoting *Pope*, 138 F.R.D. at 683). As a result, the undersigned finds that exclusion of evidence containing the "as a mother" language would not suffice as a lesser sanction.

Third, the undersigned finds that dismissing only one claim would not suffice as a sanction. It is clear that Plaintiff's fabrication of the "as a mother" language is most directly related to her discriminatory discharge claim. Thus, it relates to a pivotal issue in the discriminatory discharge claim, *i.e.*, whether Plaintiff was terminated because of her sex. Although the evidence relates to a pivotal issue for one claim, the undersigned finds that dismissal of only this single claim is sufficient for two reasons. First, dismissal of only one claim would essentially reward Plaintiff by allowing her to pursue two other claims, despite engaging in fraudulent practices during judicial proceedings. This would create an incentive for a plaintiff, who has brought multiple claims, to try to fraudulently bolster one of her claims because if caught, she could always litigate the other claims. Such an abuse of the courts is simply impermissible.

20

Second, the undersigned notes that Plaintiff's fabrication of the "as a mother" language has not merely subverted the discovery process. Plaintiff's fabrication has extended to in-court testimony. At the evidentiary hearing, Plaintiff testified in open court that she did not fabricate this language even though there is clear and convincing evidence to the contrary. Thus, Plaintiff has continued to make this false assertion before the Court, rendering her an untrustworthy party, *see Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 432 (W.D. Wash. 2002) (" 'It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct.' ") (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 352 (9th Cir. 1995), and providing the court with an additional (and independent) basis for dismissal, *see Lynch*, 363 F. Supp. 2d at 1013-14 (finding party's false testimony "constitute[d] another, substantial reason for dismissing his . . . claims with prejudice"). As a result, the undersigned concludes that dismissing only one claim would not be a sufficient deterrent for misconduct like that perpetrated in this case.

Based on the above discussion, the undersigned finds that any sanction short of dismissal would be inadequate to correct Plaintiff's misconduct. "Use of the 'ultimate sanction' addresses not only prejudice suffered by the opposing litigants, but also vindicates the judicial system as a whole, for such misconduct threatens the very

21

AO 72A
(Rev.8/8
2)

integrity of courts, which otherwise 'cannot command respect if they cannot maintain a level playing field amongst participants.' " *Qantum Commc'ns Corp.*, 473 F. Supp.2d at 1278 (quoting *Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1409 (S.D. Ga. 1998)).  As a result, Plaintiff's case should be dismissed because she fabricated the "as a mother" language.  *See Campos v. Correction Officer Smith*, 418 F. Supp. 2d 277, 279 (W.D.N.Y. 2006) (dismissing case for fabrication of evidence and citing cases for the proposition that "[a] plaintiff's knowing presentation of a falsified document to a court is sufficient grounds for dismissal of his complaint"); *Lynch*, 363 F. Supp. 2d at 1014; *Vargas*, 901 F. Supp. at 1582 (dismissing case where plaintiff relied on fabricated evidence); *see also Quiroz*, 2008 WL 3540599 at * 8 (dismissing case where plaintiff attempted to bribe witness to provide false testimony); *Lee v. Sass*, No. 04-cv-70550, 2006 WL 799176 at * 2 (E.D. Mich. Mar. 29, 2006) (dismissing case where plaintiff sought to suborn perjured testimony from material witness); *Young*, 217 F.R.D. at 71 (dismissing case where plaintiff attempted to influence testimony of two witnesses).

Accordingly, the undersigned **RECOMMENDS** that the District Court exercise its inherent powers and **GRANT** Defendants' motion to dismiss, [Doc. 56], because of Plaintiff's fabrication of evidence.

IV.    CONCLUSION

For the aforementioned reasons, the undersigned **RECOMMENDS** that Plaintiff's motion to dismiss, [Doc. 56], be **GRANTED**.  The Clerk is **DIRECTED** to terminate the referral to the undersigned.[3]

**IT IS SO RECOMMENDED AND DIRECTED**, this the 20th day of October, 2008.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[3]    If the District Court adopts this Court's factual findings, it might also consider referring this matter to the U.S. Attorney's Office.

23

AO 72A
(Rev.8/8
2)